[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: COUNT THREE OF PLAINTIFF'S COMPLAINT
On February 18, 1997, the plaintiffs, Janet Cerrone, Lois Schietinger, Doris Birchall, and Gerard Golden (the plaintiffs) filed an application for a temporary injunction and a three-count complaint against the defendants, Views of Long Hill Condominium Association, Inc. (the association), Michael Donadeo (Donadeo), Asbury Associates Limited Partnership (the declarant), Hershel Sosnoff (Hershel) and Mary Anne Sosnoff (Mary Anne). The parties have agreed to have the court decide the issue presented in the third count on the merits. To that effect, the parties have stipulated to certain facts that makes the resolution of this issue a matter of statutory interpretation.
In count three, the plaintiffs allege that they each own CT Page 10139 units in a common interest community known as Views of Long Hill Condominium (the condominium). The unit owners further allege the following facts. The association serves as a homeowners' association for the condominium. Donadeo serves as a community association manager for the condominium and is responsible for the day-to-day administration and business operations of the association and the maintenance of its books and records. Hershel and Mary Anne are members of the board of directors of the association by virtue of their appointment by the declarant. The association is governed by a Declaration of Condominium (the Declaration).
Under the terms of section 2.1 of the By-Laws, the declarant has reserved the perpetual right to appoint two members to the five member board of directors, so long as the declarant owns ten percent of the units. The provisions of this section are in direct conflict with the General Statutes § 47-245 (f) of the Connecticut Common Interest Ownership Act (CCIOA). General Statutes § 47-200 et seq. The appointment power reserved by the declarant is in derogation of the public policy behind the express language of CCIOA and is, therefore, void, illegal and of no effect.
The parties have stipulated to the following facts:
1. The plaintiffs are, by virtue of their ownership of condominium units, members of the association.
2. The plaintiffs commenced the instant action claiming that the declarant's reservation of the right to appoint two of the five members of the association's board of directors contravenes the express language and legislative intent of the CCIOA.
3. Subsection 7.11(c) of the Declaration provides that after the end of the period of declarant control "the Unit Owners shall elect a majority of the Executive Board, which shall consist of five (5) members, at least a majority of whom shall be Unit Owners".
4. Subsection 2.11(a) of the By-Laws of the association provides, in part, that after the period of declarant control, the board shall consist ". . . of five persons, three (3) of whom will be elected by Unit Owners and two (2) of whom shall be designated by the Declarant. The two persons designated by the Declarant shall be allowed to remain as members of the Executive Board until CT Page 10140 the Declarant has less than ten percent (10%) of the Units unsold . . . ."
5. The condominium was declared subsequent to the passage of the CCIOA.
6. The declarant continues to own ten (10%) or more of the units at the condominium.
7. The declarant has appointed Hershel and Mary Anne to the board of directors.
8. The parties have agreed to submit the issue of legality and validity of the declarant's appointment power to the court.
9. The parties further agree that whatever decision the court shall make with respect to the plaintiffs' application for temporary injunction as to the third count, that decision shall be binding on the parties as a final judgment on the merits of the third count, in the same manner, and to the same extent and effect as if the pleadings were closed and full trial had been had on the merits of the third count.
General Statutes § 47-203 provides: "Except as expressly provided in this chapter, its provisions may not be varied by agreement, and rights conferred by it may not be waived. . . . [A] declarant[1] may not act under a power of attorney, or use any other device, to evade the limitations or prohibitions of this chapter or the declaration." General Statutes § 47-245 (d) provides, in pertinent part: "Subject to subsection (e), the declaration may provide for a period of declarant control of the association, during which a declarant, or persons designated by him, may appoint and remove the officers and members of the executive board. Regardless of the period provided in the declaration, a period of declarant control terminates no later than the earlier of: (1) Sixty days after conveyance of sixty per cent of the units that may be created to unit owners other than a declarant . . . ." General Statutes § 47-245 (f) provides, in pertinent part: "not later than the termination of any period of declarant control, the unit owners shall elect an executive board of at least three members, at least a majority of whom shall be unit owners. The executive board shall elect the officers. The executive board members and officers shall take office upon election." The plaintiffs claim that subsections 7.11(c) of the Declaration and 2.11(a) of the By-laws of the association are in CT Page 10141 violation of General Statutes § 47-245 (f) in that they allow the declarant to appoint two members to the executive board even after it has sold sixty percent of the units to be created.[2] The defendants argue that CCIOA does not contain any prohibition against the declarant retaining a minority position on the executive board until such time that less than ten percent of the units remain unsold.
"If words of a statute are clear, the duty of a reviewing court is to apply the legislature's directive. [T]he meaning of [a] statute must, in the first instance, be sought in the language in which the act is framed . . . . If the language of the statute is clear, it is assumed that the words themselves express the intent of the legislature . . . . Where [a] statute presents no ambiguity, we need look no further than the words themselves which we assume express the intention of the legislature." (Internal quotation marks omitted.) Chotkowski v. State, 240 Conn. 246,277, 690 A.2d 368 (1997). The court believes the language of General Statutes § 47-245 (f) to be clear and unambiguous. Section47-245 (f) requires that the unit members elect an executive board upon the termination of the period of declarant control. The right of the unit owners to elect an executive board is not limited in any manner. If the court were to follow the defendants' interpretation of General Statutes § 47-245 (f), it would have to replace the phrase "shall elect an executive board" with the phrase "shall elect a majority of the members of the executive board" upon the termination of the period of declarant control. "It is axiomatic that the court itself cannot rewrite a statute to accomplish a particular result. That is the function of the legislature." (Internal quotation marks omitted.) Giffordv. Freedom of Information Commission, 227 Conn. 641, 667,631 A.2d 252 (1993).
In violation of General Statutes § 47-203, subsections 7.11(c) of the Declaration and 2.11(a) of the By-Laws vary the mandate of General Statutes § 47-245 (f) by allowing the unit owners to elect only a majority of the members of the executive board at the end of the period of declarant control. If General Statutes § 47-245 (f), as written, supported the defendants' position, there would have been no need to deviate from the actual language of the statute. Furthermore, General Statutes §47-245 (d) specifically provides for termination of declarant control no later than sixty days after the conveyance of sixty percent of the units "[r]egardless of the period provided in the declaration." CT Page 10142
Both parties agree that the CCIOA is based on the Uniform Common Interest Ownership Act (UCIOA) as promulgated in 1982 by the National Conference of Commissioners on Uniform State Laws. Comment 4 to § 3-103 of the UCIOA, which is almost identical in its wording to General Statutes § 47-245, further supports this reading of General Statutes § 47-245 (f). Uniform Laws Annotated,
volume 7, part II, § 3-103, p. 101 (Master Ed. 1997). Comment 4 to § 3-103 UCIOA provides, in pertinent part: "It might be noted that the declarant at all times (even after the expiration of the period of declarant control) is entitled to cast the votes allocated to his units in the same manner as any other owner."Id. Consequently, if the court were to find that the declarant retains the power to appoint members to the executive board after it has sold sixty percent of the units that may be created, the declarant would still be entitled to cast the votes allocated to its units for the election of the members to the remaining positions on the executive board. In reality, therefore, a declarant might largely be able to control the makeup of the executive board even after it had sold sixty percent of the units that may be created. "We must avoid interpreting a statute that would have it function in a difficult and possibly bizarre fashion. . . . Application of common sense is not excused in statutory interpretation." (Citations omitted.) CandlewoodLanding Condominium Assoc. v. New Milford, 44 Conn. App. 107, 111,686 A.2d 1007 (1997).
Further, the defendants argue that subsections (g) and (h) of the General Statutes § 47-245 would lose their meaning if the court was to find that the declarant could no longer appoint members to the executive board once it had sold sixty percent of the units that may be created. General Statutes § 47-245 (g) provides: "Notwithstanding any provision of the declaration or bylaws to the contrary, the unit owners, by a two-thirds vote of all persons present and entitled to vote at any meeting of the unit owners at which quorum is present, may remove any member of the executive board with or without cause, other than a member appointed by the declarant." General Statutes § 47-245 (h) provides: "Within thirty days after unit owners other than the declarant elect a majority of the members of the executive board, the declarant shall deliver to the association all property of the unit owners and of the association held by or controlled by the declarant . . . ."
The court concludes that these subsections would be CT Page 10143 meaningful even if it should find that the declarant loses his right to appoint members to the executive board upon the end of the period of declarant control. Subsection (g) would be applicable during the period when the declarant appoints all the members of the executive board or in the case where the declarant is appointing a majority of the members and the unit owners are electing a minority. See General Statutes § 47-245 (g);47-245 (e).[3] Subsection (h) comes into play only when the unit owners are able to elect a majority of the members to the executive board as would be the case when the declarant control comes to an end. See General Statutes § 47-245 (f).
The language of General Statutes § 47-245 (f) provides that the unit owners elect an executive board upon the termination of declarant control. General Statutes § 47-245 (f) does not qualify the right of the unit owners to elect an executive board in any manner. There is no provision in General Statutes § 47-245 that allows the declarant to appoint members to the executive board once it has conveyed sixty percent of the units that may be created.
Therefore, the court finds that subsections 7.11(c) of the Declaration and 2.11(a) of the By-Laws, which limit the unit owners to electing only a majority of the members of the executive board and reserving in the declarant the right to appoint members to the executive board until the declarant has less than ten percent of the units unsold, are in violation of General Statutes § 47-245 (f). To find otherwise would enable a post transition declarant to control forty percent of the board members and, in addition, vote all of its retained ownership rights. This could create the anomalous situation of retained control by the declarant post transition.
Accordingly, the court holds that the declarant cannot appoint members to the executive board once it has sold sixty percent of the residential units. Therefore, judgment may enter for plaintiffs on the third count of their complaint only.
SKOLNICK, J.